**Marquis Aurbach Coffing**　　　　　　　　　　　　　　　　　　E-Filed: _____
Terry A. Moore Esq.
Nevada Bar No. 7831
10001 Park Run Drive
Las Vegas, Nevada 89145
Telephone: (702) 382-0711
Facsimile: (702) 382-5816
tmoore@maclaw.com
　Attorneys for William Croft

## UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF NEVADA

| In Re: | Case No.: | 15-16063-LED |
|---|---|---|
| MONIQUE RASHAY BROWN, | Chapter: | 7 |
| Debtor. | | |

### MOTION FOR ORDER GRANTING RELIEF FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(D)(1), (D)(2) & (D)(4), AND WAIVER OF THE 14-DAY STAY UNDER FRBP 4001(A)(3)

William Croft (hereinafter "Movant" or "Croft"), by and through his counsel of record, Terry A. Moore, Esq. of the law firm of Marquis Aurbach Coffing, hereby moves this Court for an Order Granting Relief from the Automatic Stay pursuant to 11 U.S.C. § 362(d)(1), (d)(2) & (d)(4), to allow Croft to complete eviction proceedings against Debtor, Monique Rashay Brown (hereinafter "Debtor") on the following real property: 2275 S. Pioneer Way, Las Vegas, Nevada 89117 (the "Property").

This Motion is based upon the following grounds and the following reasons: (1) cause exists to terminate the stay under Section 362(d)(1) because this Bankruptcy Case was not filed in good faith but in furtherance of a two-party dispute for the sole purpose of delaying the eviction of the Debtor from the Property; (2) cause also exists to terminate the stay under Section 362(d)(2) because there is no equity in the property for the Debtor and the property is not necessary for an effective reorganization since a plan cannot be confirmed over the Bank's objection; (and 3) cause exists to terminate the stay under Section 362(d)(4), as the bankruptcy was filed for the sole purpose to hinder, delay and defraud the creditor.

In the event the automatic stay is terminated, creditor seeks a waiver of the 14-day stay of the order terminating the stay imposed by Bankruptcy Rule 4001(a)(3), as there is no legitimate reason to further postpone the eviction.

This Motion is supported by the Declaration of William Croft (the "Croft Declaration"), the owner of the Property. The Declaration is filed separately and concurrently with the Court pursuant to Rule 9014(c)(2) of the Local Rules of Bankruptcy Practice. This Motion is also based upon all the papers and pleadings on file herein, the following Memorandum of Points and Authorities, together with such other and further evidence and argument as may be presented and considered by this Court at any hearing of the Motion, and any oral argument the Court may choose to hear on the Motion.

Dated this 16th day of November, 2015.

MARQUIS AURBACH COFFING

By _____
Terry A. Moore, Esq.
Nevada Bar No. 7831
10001 Park Run Drive
Las Vegas, Nevada 89145
Attorney(s) for William Croft

## MEMORANDUM OF POINTS AND AUTHORITIES

I. **JURISDICTION.**

This Court has jurisdiction over this Motion Requesting Relief from the Automatic Stay pursuant to 28 USC §1334 and 11 USC §362. This Motion is made pursuant to 11 USC §362(d)(1) and (2), Bankruptcy Rules 4001(a) and 9014, and is based upon the Points and Authorities, Declaration of William Croft in support hereof (the "Croft Declaration"), filed concurrently herewith, and upon all of the records and pleadings on file herein.

II. **STATEMENT OF FACTS.**

Movant is the owner of certain real property located at 2275 S. Pioneer Way, Las Vegas, Nevada 89117, which property is currently leased by Debtor. A copy of the lease agreement is

attached hereto as **Exhibit "1"** and incorporated herein as reference. Currently, Debtor is delinquent $3,500.00 in pre-petition rents and $1,750.00 in post-petition rent to Movant plus late fees, court costs and eviction fees totaling $603.06, for a total amount due of $5,853.06. A copy of the accounting ledger reflecting arrearages is attached hereto as **Exhibit "2"** and incorporated herein as reference. Debtor has refused to pay the pre-petition rent and, in any event, prior to the filing of her Petition, the tenancy was terminated and they are in a month-to-month status. Similarly, Debtor has refused to pay the post-petition rent.

For the foregoing reasons, Movant respectfully requests that the Court terminate the Automatic Stay so as to allow Movant to continue with evictions proceedings against the Debtor.

### III.  LAW AND ARGUMENT.

As stated above, Movant requests that the Court terminate the Automatic Stay for cause to permit it to continue with eviction proceedings against the Debtor. Cause exists to terminate the Stay because the Debtor's lack of equity in the property is insufficient to provide adequate protection to the Movant. Furthermore, because the Debtor lacks equity in the property and the property is not necessary to an effective reorganization, the Stay may be lifted pursuant to 11 USC §362(d)(1) and (2).

    **A.**    **CAUSE EXISTS TO LIFT THE AUTOMATIC STAY PURSUANT TO 11 USC §362(d)(1).**

11 USC §362(d)(1) requires relief from the Automatic Stay for cause, including the lack of adequate protection of an interest in property[.] ""Cause" has no clear definition and is determined on a case-by-case basis." In Re Tucson Estates, Inc., 912 F2d. 1162, 1166 (9th Cir. 1990). As the party requesting relief from the Automatic Stay, Movant recognizes its burden of proof on the issue of the Debtor's equity in the property under 11 USC §362(g)(1). 11 USC §362(g)(2) places the burden of proof on the Debtor for all other issues, including the burden of proof to show that the Debtor is entitled to a continuation of the Stay. In Re 234-6 West 22nd St. Corp., 214 B.R. 751, 756 (Bkr. SDNY 1997). While the exact meaning of "cause" is not set forth in the code, certain factors present in this case constitute cause.

MAC:14193-001 2645732_1 11/16/2015 10:56 AM

First and foremost, Debtor's lack of equity in the property (Debtor is the tenant and does not own the real property), together with the Debtor's obvious inability to continue making lease payments, demonstrate that Movant does not enjoy adequate protection in the real property. This lack of adequate protection constitutes "cause" pursuant to 11 USC §362(d)(1). As stated above, since filing the Petition, Debtor has not offered any periodic payments to the Movant for post-petition rents. Accordingly, cause exists to terminate the Automatic Stay pursuant to 11 USC §362(d)(1).

### B.   THE COURT MAY GRANT RELIEF FROM THE AUTOMATIC STAY PURSUANT TO 11 USC §362(d)(2).

#### 1.   The Debtor Does Not Have Any Equity in the Property.

Cause also exists to terminate the stay under Section 362(d)(2) of the Bankruptcy Code on the grounds that the Debtor has no equity in the Property and the Property is not necessary for an effective reorganization. See 11 U.S.C. § 362(d)(2). With respect to a stay of an act against property, Section 362(d)(2) permits termination of the automatic stay where the property is not necessary for an effective reorganization and the debtor does not have any equity in the property. The term "equity" in the property has been interpreted to mean the value, above all secured claims against the property that can be realized from the sale of the property for the benefit of unsecured creditors. See In re Mellor, 734 F.2d 1396, 1400, n2 (9th Cir. 1984) (defining "equity" as "the value, above all secured claims against the property, that can be realized from the sale of the property for the benefit of the unsecured creditors"); see also Stewart v. Gurley, 745 F.2d 1194, 195 (9th Cir. 1984) (defining the difference between the property value and the total amount of liens against it).

According to the United States Supreme Court in *In re Timbers of Inwood Forest Associates, Ltd*, 484 U.S. at 375, once the movant under section 362(d)(2) establishes that it is an undersecured creditor, it is the burden of the debtor to establish that the collateral at issue is "necessary to an effective reorganization." Id. at 375 (citing 11 U.S.C. § 362(g)). What this requires is not merely a showing that if there is conceivably to be an effective reorganization, the property will be needed for it; but that the property is essential for an effective reorganization

that is in prospect. Id. at 375-76. This means that there must be "a reasonable possibility of a successful reorganization within a reasonable time." Id. at 376. The Court recognized that even if the debtor is within the plan exclusivity period, lack of any realistic prospect of effective reorganization will require section 362(d)(2) relief. Id.

Under Section 362(a)(2), property is necessary for an effective reorganization only if the debtor is able to confirm a plan within a reasonable period of time. See In re Dollar Associates, 172 B.R. 945, 953 (Bankr. N.D.Cal. 1994) (citing United Savings Ass'n v. Timbers of Inwood Forest, 484 U.S. 365, 375-76 (1988)). The court in *In re Dollar Associates* held that if the debtor lacks equity in the property, relief from the automatic stay may be granted if the moving creditor can block confirmation of any reorganization plan. Id.; see also John Hancock Mut. Life Ins. Co. v. Route 37 Business Park Associates, 987 F.2d 154 (3d Cir. 1993), rehearing denied (finding that chapter 11 plan placed unsecured portion of mortgagee's claim against debtor mortgagor in class different from other unsecured claims had no reasonable possibility of confirmation; therefore, mortgagee was entitled to relief from the automatic stay to complete foreclosure proceedings);[1] In re One Times Square Associates Ltd. Partnership, 165 B.R. 773 (S.D.N.Y.1994), affirmed 41 F.3d 1502, certiorari denied 115 S.Ct. 1107, 513 U.S. 1153, 130 L.Ed.2d 1072 (holding that automatic stay would be lifted under Section 362(d)(2), based on debtor's lack of equity in property on which mortgagee sought to foreclose, where debtor could not obtain confirmation of plan except by impermissibly gerrymandering classes to obtain acceptance of plan by at least one impaired class).

Here, as stated above, Debtor has no equity in the Property as Debtor is merely the tenant of the property.

---

[1] The court recognized that while "a lift stay hearing should not be transformed into a confirmation hearing," "[t]he 'effective reorganization' requirement enunciated by the Supreme Court ... require[s] a showing by a debtor ... that a proposed or contemplated plan is not patently unconfirmable and has a realistic chance of being confirmed." See John Hancock Mut. Life Ins. Co., 987 F.2d at 157 (quoting In re 266 Washington Assocs., 141 B.R. 275, 281 (Bankr.E.D.N.Y.1992), aff'd, 147 B.R. 827 (E.D.N.Y.1992)). The *John Hancock* court considered whether the plan proposed patently violated the Bankruptcy Code's requirements for confirmation. Id. at 157.

MAC:14193-001 2645732_1 11/16/2015 10:56 AM

### 2. The Property is Not Necessary to an Effective Reorganization.

The property in this case is not "necessary to an effective reorganization" because the Debtor in this case is not dependent on the real property for a successful Chapter 7.

### C. WAIVER OF 14-DAY STAY PURSUANT TO FRBP 4001(A)(3) IS APPROPRIATE BECAUSE THE PROPERTY IS NOT PROPERTY OF ESTATE UNDER SECTION 541, DEBTOR HAS NO EQUITY IN THE PROPERTY, DEBTOR'S BANKRUPTCY LACKED GOOD FAITH AND THERE IS NO NEED TO DELAY THE EVICTION.

Should the Court conclude that stay relief is appropriate, creditor further requests that the Court waive the 14-day stay of order pursuant to FRBP 4001(a)(3) to allow creditor to pursue its contractual and state law rights and remedies with respect to the Property without further order of the Court. There is no reason to further delay creditor's efforts to evict the Debtor from the Property. Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure governs the stay of orders, and provides as follows:

> An order granting a motion for relief from an automatic stay made in accordance with Rule 4001(a)(1) is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise.

In the instant case, creditor is requesting an order from the court waiving the 14-day stay requirement set forth in Rule 4001(a), to allow creditor to proceed with the eviction of the Debtor from the Property. Under the circumstances presented above, there is no reason to enforce the 14-day stay provision under Rule 4001. Thus, waiver of the fourteen-day stay of the Order Terminating the Stay is appropriate in this case.

## IV. CONCLUSION.

Movant has demonstrated that cause exists to terminate the Stay to allow Movant to proceed with eviction proceedings against the Debtor. Further, Movant has demonstrated that the Debtor lacks any equity in the property and that the property is not necessary for Debtor to reorganize. Accordingly, Movant requests that this Court terminate the Automatic Stay imposed by 11 USC §362(a) and grant the following:

1. Relief from the Stay, as to the Debtor and the Bankruptcy estate pursuant to 11 USC §362(d)(1) and (2), allowing Movant (and any successors or assignees) to proceed under

MAC:14193-001 2645732_1 11/16/2015 10:56 AM

applicable non-bankruptcy law to enforce its remedies to evict Debtor and obtain possession of the Property at 2275 S. Pioneer Way, Las Vegas, Nevada 89117;

2. That the Order is binding and effective despite any conversion of this bankruptcy case to a case under any other chapter of Title 11 of the United States Code;

3. That the fourteen (14) day Stay under Bankruptcy Rule 4001(a)(3) be waived; and

4. For such other relief as this Court deems appropriate.

MARQUIS AURBACH COFFING

By _____
Terry A. Moore Esq.
Nevada Bar No. 7831
10001 Park Run Drive
Las Vegas, Nevada 89145
Attorney(s) for William Croft

MAC:14193-001 2645732_1 11/16/2015 10:56 AM

# Exhibit 1

# Monthly Rental Agreement

THIS AGREEMENT, entered into this 2ND day of JUNE, 20 15, by and between ENAS AND BILL CROFT, hereinafter Lessor, and PARNELL COLVIN SR. & MONIQUE RASHAY BROWN, hereinafter Lessee.

WITNESSETH: That for and in consideration of the payment of the rents and the performance of the covenants contained on the part of Lessee, said Lessor does hereby demise and let unto Lessee, and Lessee hires from Lessor those premises described as: Single Family Residence
_____, located
at: 2275 S PIONEER WAY LAS VEGAS NV 89117

for a tenancy from month-to-month commencing on the 2ND day of JUNE 20 15, and at a monthly rental of SEVENTEEN HUNDRED FIFTY DOLLARS Dollars ($ 1750) per month, payable monthly in advance on the 1st day of each and every month, on the following TERMS AND CONDITIONS:

1. **Form of Payment.** Lessee agrees to pay rent each month in the form of one personal check, OR one cashier's check, OR one money order made out to ENAS AND BILL CROFT.

2. **Delivery of Payment.** Rent will be paid:
   ☑ in person, at 4110 W Desert Inn Rd. Las Vegas NV 89102
   ☐ by mail, to _____

3. **Returned Checks.** If for any reason, a check used by Lessee to pay Lessor is returned without having been paid, Lessee will pay a charge of Twenty Five Dollars _____ Dollars ($ 25.00) as additional rent AND take whatever other consequences there might be in making a late payment. After the second time a Lessee's check is returned, Lessee must thereafter secure a cashier's check or money order for payment of rent.

4. **Late Payments.** For any rent payment not paid by the date due, Lessee shall pay a late fee in the amount of ONE hundred SEVENTY FIVE Dollars ($ 175).

5. **Prorated First Month.** For the period from Lessee's move-in date N/A _____ through the end of the month, Lessee will pay to Lessor a prorated monthly rent of _____ Dollars ($ _____). This amount will be paid on or before the date the Lessee moves in.

6. **Occupants.** The said premises shall be occupied by no more than 2 adults and 3 children.

7. **Pets.** Pets shall not be allowed without the prior written consent of the Lessor. At the time of signing this lease, Lessee shall pay to Lessor, in trust, a deposit of n/a _____ Dollars ($ 0.00), to be held and disbursed for pet damages to the Premises (if any) as provided by law. This deposit is in addition to any other security deposit stated in this lease. Any Lessee who wishes to keep a pet in the rented unit must sign a Pet Agreement Addendum.

8. **Parking.** Any parking that may be provided is strictly self-park and is at owner's risk. Parking fees are for a license to park only. No bailment or bailee custody is intended. Lessor is not responsible for, nor does Lessor assume any liability for damages caused by fire, theft, casualty or any other cause whatsoever with respect to any car or its contents. Snow removal is the responsibility of the car owner. Any tenant who wished to rent a parking space or garage must sign a Parking Space or Garage Rental Agreement.

9. **Ordinances and Statutes.** Lessee shall comply with all statutes, ordinances and requirements of all municipal, state and federal authorities now in force, or which may hereafter be in force, pertaining to the use of the premises.

Page 1

www.socrates.com

© 2004, Socrates Media, LLC
LF251 • Rev 04/06

07/14/2015  20:58   3669320              FC                                              PAGE  03/04

**10. Repairs or Alterations.** Lessee shall be responsible for damages caused by his negligence and that of his family or invitees and guests. Lessee shall not paint, paper or otherwise redecorate or make alterations to the premises without the prior written consent of Lessor. All alterations, additions, or improvements made to the premises with the consent of Lessor shall become the property of Lessor and shall remain upon and be surrendered with the premises.

**11. Painting.** Lessor reserves the right to determine when the dwelling will be painted unless there is any law to the contrary.

**12. Keys.** Lessee will be given ____2____ key(s) to the premises and ____0____ mailbox key(s). If all keys are not returned to Lessor following termination of lease, Lessee shall be charged __two hundred dollars_____ Dollars ($__200_____).

**13. Locks.** Lessee agrees not to change locks on any door or mailbox without first obtaining Lessor's written permission. Having obtained written permission, Lessee agrees to pay for changing the locks and to provide Lessor with one duplicate key per lock.

**14. Upkeep of Premises.** Lessee shall keep and maintain the premises in a clean and sanitary condition at all times, and upon the termination of the tenancy shall surrender the premises to Lessor in as good condition as when received, ordinary wear and damage by the elements excepted.

**15. Assignment and Subletting.** Lessee shall not assign this Agreement or sublet any portion of the premises without prior written consent of Lessor.

**16. Utilities.** Lessee shall be responsible for the payment of all utilities and services, except __all utilities paid by Lessee_____, which shall be paid by Lessor.

**17. Default.** If Lessee shall fail to pay rent when due, or perform any term hereof, after not less than three (3) days written notice of such default given in the manner required by law, Lessor, at his option, may terminate all rights of Lessee hereunder, unless Lessee, within said time, shall cure such default. If Lessee abandons or vacates the property, while in default of the payment of rent, Lessor may consider any property left on the premises to be abandoned and may dispose of the same in any manner allowed by law.

**18. Security.** The security deposit in the amount of $____1750____, shall secure the performance of Lessee's obligations hereunder. Lessor may, but shall not be obligated to, apply all or portions of said deposit on account of Lessee's obligations hereunder. Any balance remaining upon termination shall be returned, without interest, to Lessee. Lessee shall not have the right to apply the security deposit in payment of the last month's rent.

**19. Right of Entry.** Lessor reserves the right to enter the demised premises at all reasonable hours for the purpose of inspection, and whenever necessary to make repairs and alterations to the demised premises. Lessee hereby grants permission to Lessor to show the demised premises to prospective purchasers, mortgagees, tenants, workmen, or contractors at reasonable hours of the day.

**20. Deposit Refunds.** The balance of all deposits shall be refunded within two (2) weeks (21 days in California and Wisconsin) from date possession is delivered to Lessor, together with a statement showing any charges made against such deposits by Lessor.

**21. Termination.** This Agreement and the tenancy hereby granted may be terminated at any time by either party hereto by giving to the other party not less than one full month's prior notice in writing.

**22. Attorney's Fees.** The prevailing party in an action brought for the recovery of rent or other moneys due or to become due under this lease or by reason of a breach of any covenant herein contained or for the recovery of the possession of said premises, or to compel the performance of anything agreed to be done herein, or to recover for damages to said property, or to enjoin any act contrary to the provision hereof, shall be awarded all of the costs in connection therewith, including, but not by way of limitation, reasonable attorney's fees.

www.socrates.com                                                              © 2004, Socrates Media, LLC
                                                                              LF253 • Rev 04/04

07/14/2015  20:58    3669328                         FC                                    PAGE  04/04

**23. Rules and Regulations.** Lessor's existing rules and regulations, if any, shall be signed by Lessee, attached to this agreement and incorporated into it. Lessor may adopt other rules and regulations at a later time provided that they have a legitimate purpose, not modify Lessee's rights substantially and not become effective without notice of at least two (2) weeks.

**24. Radon Gas Disclosure.** As required by law, (Landlord) (Seller) makes the following disclosure: "Radon Gas" is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in _____ N/A _____. Additional information regarding radon and radon testing may be obtained from your county public health unit.

**25. Lead Paint Disclosure.** "Housing built before 1978 may contain lead-based paint. Lead from paint, paint chips, and dust can pose health hazards if not managed properly. Lead exposure is especially harmful to young children and pregnant women. Before renting pre-1978 housing, lessors must disclose the presence of known lead-based paint and/or lead-based paint hazards in the dwelling. Lessees must also receive a federally approved pamphlet on lead poisoning prevention."

**26. Additional Terms and Conditions.** House will be rented with all appliances, including, fridge, microwave oven, washer, dryer, heater, all pool equipment. Lessee is responsible for normal repairs up to $200.
This is two year lease starting June 2, 2015 and ending May 31, 2017.
Pool is inoperable and lessee accepts the pool in current condition. Rent has been adjusted taking condition of pool in consideration. Fire alarm has been repaired to lessee satisfaction and lessee's assumes respoinsiblity during term of lease. Landscaping maintence will be the responsibility of the lessee for the term of the lease.
Storage shed should remain locked and all content property of the leesor.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement in duplicate the day and year first above written.

Signed in the presence of:

Witness: _____   Lessee: _[signature]_

Witness: _____   Lessor: _[signature]_
                                                    William Craft & Eros Craft

NOTICE: State law establishes rights and obligations for parties to rental agreements. This agreement is required to comply with the Truth in Renting Act or the applicable Landlord Tenant Statute or code of your state. If you have a question about the interpretation of legality of a provision of this agreement, you may want to seek assistance from a lawyer or other qualified person.

Page 3

# Exhibit 2

Accounting Ledger for 2275 S. Pioneer Way, Las Vegas, NV 89117

|  | Rent | Late Fee | Court Cost/Eviction Fee |
|---|---|---|---|
| September | $1,750.00 | $175.00 |  |
| October | $1,750.00 | $175.00 |  |
| November | $1,750.00 | $175.00 |  |
| Total | $5,250.00 | $525.00 | $78.06 |